## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5485 | **DATE** | JANUARY 2(  , 2004 |
| **CASE TITLE** | GUARANTY RESIDENTIAL LENDING, INC. v. INTERNATIONAL MORTGAGE CENTER, INC., etc., et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Plaintiff's motion to file a surreply [34] is granted. Defendant's motion for entry of default [39] is denied without prejudice. Defendants' motions to dismiss [7, 33] are granted in part and denied in part.  Plaintiff's complaint is dismissed. By February 11, 2004, plaintiff may file an amended complaint that is not inconsistent with today's ruling. By March 3, 2004, defendants shall answer or otherwise plead to the amended complaint. A status hearing will be held on March 17, 2004 at 11:00 a.m.

(11) ■ [For further detail see attached Memorandum Opinion and Order.]

| | | | | |
|---|---|---|---|---|
| ✔ | No notices required, advised in open court. | | number of notices | Document Number |
| | No notices required. | | | |
| ✔ | Notices mailed by judge's staff to attorneys not present in court. | | JAN 22 2004 date docketed | |
| | Notified counsel by telephone. | | | 43 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 11/21/04 date mailed notice | |
| | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


GUARANTY RESIDENTIAL LENDING, INC., )
                                    )
           Plaintiff, )
                                    )
     v. )     No. 03 C 5485
                                    )
INTERNATIONAL MORTGAGE CENTER, INC., )
a/k/a HTFC Corporation, et al., )
                                    )
         Defendants. )

DOCKETED
JAN 2 2 2004

## MEMORANDUM OPINION AND ORDER


     Plaintiff Guaranty Residential Lending, Inc. alleges that
it purchased six fraudulent mortgage loans (the "Subject Loans")
on the secondary market and that the named defendants are
responsible for the losses resulting from the Subject Loans.
Plaintiff alleges a scheme in which residential properties
located in Chicago, Illinois (the "Subject Properties") were
purchased and then purportedly resold at inflated values, with
the Subject Loans being based on the inflated values.  As to at
least four of the Subject Properties, the purported second
purchasers and borrowers were already deceased at the time the
Subject Loans were closed.  When the Subject Loans defaulted,
there was no mortgagee available for collection and the Subject

Properties were worth substantially less than the principal of the Subject Loans. Plaintiff alleges it lost more than $770,000 on the Subject Loans. Four corporations and six individuals are named as defendants. One count of plaintiff's Complaint is a federal claim for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-68. All other counts contain state common law claims. The state law claims are supplemental to the federal RICO claim. See 28 U.S.C. § 1367. Plaintiff also asserts that there is diversity jurisdiction in that there is complete diversity of citizenship and the amount in controversy exceeds $75,000.[1]

Two motions to dismiss are pending.[2] One motion is brought by defendant Lawyers Title Insurance Corporation ("Lawyers Title") and the other motion is brought by defendants Nations Title Agency of Illinois ("Nations Title") and Janice Seeman, who allegedly was Nations Title's closing manager.[3] In

---

[1]As to three of the corporate defendants, the Complaint does not contain an allegation as to a principal place of business. As to three of the individual defendants, plaintiff fails to allege a state of residence. Plaintiff, however, has noticed for presentation a motion to amend the Complaint which corrects these omissions. According to the allegations of the proposed amended complaint, there is complete diversity of citizenship. The proposed amended complaint does not contain any changes other than regarding the citizenship of defendants.

[2]Plaintiff's motion to file a surreply will be granted and the surreply has been considered.

[3]Although only three defendants have moved for dismissal, to the extent any successful argument to dismiss a count would be

their briefs, the parties generally fail to recognize the
interrelationships between the applicable law and pleading
standards applicable to this case.  While state law[4] provides the
substantive law for the common law claims that are alleged,
federal law establishes the pleading standard.  Muzikowski v.
Paramount Pictures Corp., 322 F.3d 918, 925-26 (7th Cir. 2003);
Johnson v. Hondo, Inc., 125 F.3d 408, 417 (7th Cir. 1997);
Lifton v. Board of Education of City of Chicago, 290 F. Supp. 2d
940, 946 (N.D. Ill. 2003).  Thus, Illinois law provides the
elements of each particular common law claim, but federal law
controls as to what must be alleged in the Complaint.  Except as
to those claims based on fraud, notice pleading is all that is
required.  See Fed. R. Civ. P. 8.  Where fraud is alleged,
however, the circumstances must be alleged with particularity,
though intent and knowledge may still be averred generally.  See
Fed. R. Civ. P. 9(b).

The Complaint contains eight counts denominated as
follows:  I:  fraud by all defendants; II:  conspiracy to defraud
by all defendants; III:  negligent misrepresentation by all

---

applicable to all defendants named in that count, the count would
be dismissed as to all defendants.

    [4]As to the pending motions, the parties all implicitly
agree that the state law to be applied is Illinois law.  See
Wood v. Mid-Valley, Inc., 942 F.2d 425, 426-27 (7th Cir. 1991);
Morris Silverman Management Corp. v. Western Union Financial
Services, Inc., 284 F. Supp. 2d 964, 968-69 (N.D. Ill. 2003).

defendants; IV: promissory estoppel[5] by all defendants; V: RICO

violations (18 U.S.C. §§ 1962(a), (c), & (d)) by all defendants

based on predicate acts of mail fraud (id. § 1341), wire fraud

(id. § 1343), and bank fraud (id. § 1344); VI: breach of

contract by defendant International Mortgage Center, Inc. ("IMC")

only; VII: unjust enrichment by IMC only; and VIII:

constructive trust against IMC only.

On a Rule 12(b)(6) motion to dismiss, plaintiff's

well-pleaded allegations of fact are taken as true and all

reasonable inferences are drawn in plaintiff's favor.

Leatherman v. Tarrant County Narcotics Intelligence &

Coordination Unit, 507 U.S. 163, 164 (1993); Dixon v. Page,

291 F.3d 485, 486 (7th Cir. 2002); Stachon v. United Consumers

Club, Inc., 229 F.3d 673, 675 (7th Cir. 2000). Ordinarily, a

complaint need not set forth all relevant facts or recite the

law; all that is required is a short and plain statement showing

that the party is entitled to relief. Fed. R. Civ. P. 8(a)(2);

Boim v. Quaranic Literacy Institute, 291 F.3d 1000, 1008 (7th

Cir. 2002); Anderson v. Simon, 217 F.3d 472, 474 (7th Cir. 2000),

cert. denied, 531 U.S. 1073 (2001); Scott v. City of Chicago,

195 F.3d 950, 951 (7th Cir. 1999). Ordinarily, a plaintiff in a

suit in federal court need not plead facts; conclusions may be

---

[5]The Complaint labels Count IV as "detrimental reliance."
In response to the motions to dismiss, plaintiff clarifies that
the more appropriate label would be promissory estoppel.

pleaded as long as the defendant has at least minimal notice of the claim. Fed. R. Civ. P. 8(a)(2); <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002); <u>Scott</u>, 195 F.3d at 951; <u>Albiero v. City of Kankakee</u>, 122 F.3d 417, 419 (7th Cir. 1997); <u>Jackson v. Marion County</u>, 66 F.3d 151, 153-54 (7th Cir. 1995). However, to the extent fraud is alleged, it must be pleaded with particularity. <u>See</u> Fed. R. Civ. P. 9(b); <u>Slaney v. The International Amateur Athletic Federation</u>, 244 F.3d 580, 597 (7th Cir.), <u>cert. denied</u>, 534 U.S. 828 (2001); <u>Shapo v. O'Shaughnessy</u>, 246 F. Supp. 2d 935, 955-56 (N.D. Ill. 2002). Additionally, even if not required to plead specific facts, a plaintiff can plead itself out of court by alleging facts showing there is no viable claim. <u>See Slaney</u>, 244 F.3d at 597; <u>Kauthar SDN BHD v. Sternberg</u>, 149 F.3d 659, 669-70 & n.14 (7th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1114 (1999); <u>Jackson</u>, 66 F.3d at 153-54.

Ordinarily, as long as they are consistent with the allegations of the complaint, a plaintiff may assert additional facts in its response to a motion to dismiss. <u>Brokaw v. Mercer County</u>, 235 F.3d 1000, 1006 (7th Cir. 2000); <u>Forseth v. Village of Sussex</u>, 199 F.3d 363, 368 (7th Cir. 2000); <u>Albiero</u>, 122 F.3d at 419; <u>Gutierrez v. Peters</u>, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997). However, Rule 9(b) requires that the necessary allegations be in the complaint itself. <u>Kennedy v. Venrock Associates</u>, 348 F.3d 584, 593 (7th Cir. 2003); <u>Abrams v. Van</u>

Kampen Funds, Inc., 2002 WL 1160171 *2 (N.D. Ill. May 30, 2002); Chicago District Council of Carpenters Welfare Fund v. Angulo, 169 F. Supp. 2d 880, 886 (N.D. Ill. 2001); Implant Innovations, Inc. v. Nobelpharma AB, 1995 WL 562092 *5 (N.D. Ill. Sept. 14, 1995). Additional allegations contained in the responsive brief, however, may indicate that plaintiff should be given the opportunity to amend the Complaint to comply with Rule 9(b). See Ziemba v. Cascade International, Inc., 256 F.3d 1194, 1213 (11th Cir. 2001); Angulo, 169 F. Supp. 2d at 886; Implant Innovations, 1995 WL 562092 at *5. While additional allegations contained in a responsive brief are not considered to be incorporated in the complaint, documents that are referred to in the complaint and that are central to a claim that is made may be considered to be part of the complaint even if not actually attached to the complaint. Rosenblum v. Travelbyus.com Ltd., 299 F.3d 657, 661 (7th Cir. 2002); Duferco Steel Inc. v. M/V Kalisti, 121 F.3d 321, 324 n.3 (7th Cir. 1997); Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993). However, where a dispute exists as to whether a document provided by the moving party is authentic or complete, the document will not be considered on a motion to dismiss even if the document was referenced in the complaint and central to a claim. Divane v. Nextiraone, LLC, 2002 WL 31433504 *2 (N.D. Ill. Oct. 30, 2002). Where the document may properly be considered, though, the actual

document will override inconsistent descriptions of the document alleged in the body of the complaint.  See Rosenblum, 299 F.3d at 661 (quoting 5 Wright & Miller, Federal Practice & Procedure: Civil 2d § 1327 at 766 (1990)); In re Wade, 969 F.2d 241, 249 (7th Cir. 1992); Beam v. IPCO Corp., 838 F.2d 242, 244-45 (7th Cir. 1988).

In the complaint itself, it is unnecessary to specifically identify the legal basis for a claim as long as the facts alleged would support relief.  Forseth, 199 F.3d at 368; Scott, 195 F.3d at 951; Albiero, 122 F.3d 419; Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992); Dodaro v. Village of Glendale Heights, 2003 WL 1720030 *8 (N.D. Ill. March 31, 2003).  The plaintiff is not bound by legal characterizations of the claims contained in the complaint. Forseth, 199 F.3d at 368; Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041 (7th Cir. 1999).  However, in response to a motion to dismiss that raises the issue, the plaintiff must identify a legal basis for a claim and make adequate legal arguments in support of it.  Kirksey, 168 F.3d at 1041-42; Stransky v. Cummins Engine Co., 51 F.3d 1329, 1335 (7th Cir. 1995); Levin v. Childers, 101 F.3d 44, 46 (6th Cir. 1996); Gilmore v. Southwestern Bell Mobile Systems, L.L.C., 224 F. Supp. 2d 1172, 1175 (N.D. Ill. 2002); Carpenter v. City of Northlake, 948 F. Supp. 759, 765 (N.D. Ill. 1996).

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The circumstances of fraud generally include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Slaney, 244 F.3d at 599; General Electric Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1078 (7th Cir. 1997). A complaint must outline the alleged misrepresentations and reasonably notify a defendant of the specifics of the alleged fraudulent activity, including the particular defendant's role. Lachmund v. ADM Investor Services, Inc., 191 F.3d 777, 782 (7th Cir. 1999); Goren v. New Vision International, Inc., 156 F.3d 721, 730 (7th Cir. 1998); Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1020 (7th Cir. 1992); Ward Enterprises, Inc. v. Bang & Olufsen, 2003 WL 22859793 *1 (N.D. Ill. Dec. 2, 2003); Gilmore v. Southwestern Bell Mobile Systems, L.L.C., 210 F.R.D. 212, 224 (N.D. Ill. 2001). Fair notice is the most basic consideration. Vicom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 777-78 (7th Cir. 1994); In re Bridgestone/Firestone Inc. Tires Products Liability Litigation, 2002 WL 31689264 *8 (S.D. Ind. Nov. 20, 2002); Gilmore, 210 F.R.D. at 224.

Additionally, the requirements of Rule 9(b) may be relaxed where the plaintiff makes an adequate showing that necessary information is within the control of a defendant so that particularized pleading cannot be fully accomplished prior to receiving discovery.  See Emery v. American General Finance, Inc., 134 F.3d 1321, 1323 (7th Cir.), cert. denied, 525 U.S. 818 (1998).

By its language, the particularity requirement of Rule 9(b) is limited to the "circumstances constituting fraud."  See Lachmund, 191 F.3d at 783; Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.4 (2d Cir. 1990); Hirata Corp. v. J.B. Oxford & Co., 193 F.R.D. 589, 596-97 (S.D. Ind. 2000).  Thus an agency relationship establishing vicarious liability for fraud generally does not have to be pleaded with particularity.  See Lachmund, 191 F.3d at 783; Hirata, 193 F.R.D. at 597.  Where a conspiracy to commit fraud is alleged, the conspiracy itself generally need not be alleged with particularity.  See Hecht, 897 F.2d at 26 n.4; Perlman v. Zell, 938 F. Supp. 1327, 1348-49 (N.D. Ill. 1996), aff'd, 185 F.3d 850 (7th Cir. 1999).  However, where the same circumstances establish both the fraud and an otherwise independent basis for liability, both must be alleged with particularity.  For example, where there is no separate agency relationship relied on as a basis for fraud, only vicarious liability based on being a coconspirator, participation

in the conspiracy must be alleged with particularity.  See
Lachmund, 191 F.3d at 783.

The following facts are assumed to be true for purposes
of ruling on the pending motions to dismiss.  The Complaint
describes the named defendants as follows.  Defendant IMC, also
known as HTFC Corp.,[6] has its principal place of business in New
York and is a licensed mortgage banker in Illinois.  Defendant
Aaron Wider is IMC's chief executive officer and sole
shareholder.  Defendant Century Mortgage & Funding, Inc. ("CMF")
has its principal place of business in Illinois and is a
subsidiary of or otherwise legally affiliated with IMC.  CMF
acted as the mortgage broker and original lender for each of the
Subject Loans.  Defendant Tommy Pililimis ("Pililimis") is an
Illinois resident and was employed by IMC and CMF.  Pililimis
represented that he conducted face-to-face interviews with
borrowers on the Subject Loans even though those borrowers were
already dead at the time the interviews purportedly occurred.

Defendant Nations Title transacts business at a location
in Illinois.  Nations Title was the title company/closing agent
on each of the Subject Loans when originated and funded by
IMC/CMF.  Nations Title prepared the documents of conveyance,

---

[6]HTFC has filed its own answer in which it alleges that
it is an entity distinct from IMC.  Whether IMC and HTFC are
separate and distinct entities is not pertinent to the pending
motions to dismiss.

settled the transactions, collected payments from the buyers and sellers, and disbursed proceeds. It is alleged that Nations Title "is an approved local agent of Defendant Lawyers Title Insurance Corp. and holds itself out as such." Compl. ¶ 8. Defendant Seeman was employed as a closing manager for Nations Title and acted as the settlement agent for each of the Subject Loan transactions. Seeman is a resident of Illinois and a certified notary public in Illinois. Nations Title and Seeman were involved in the closing of the Subject Loans when funded and originated by IMC/CMF. Nations Title and Seeman were not directly involved in the sale of the Subject Loans to plaintiff, but documents they prepared at the closings were provided to plaintiff at the time the Subject Loans were sold to plaintiff.

Defendant Lawyers Title transacts business at a location in Illinois. Lawyers Title is in the business of underwriting title insurance for approved local agents. Lawyers Title is the underwriter for the property title insurance for each of the Subject Loans. It is alleged that, although Lawyers Title "did not itself actively participate in the conspiracy to defraud Guaranty Residential, under principles of agency law, [Lawyers Title] is vicariously liable for acts of its agent, [Nations Title], which did actively participate in this conspiracy." Compl. ¶ 9.

Defendants Steve Fobs, Jr., Stavros (or Steven) Bourmas, and Anthony Mitchell (the "Appraiser Defendants") were all certified residential real estate appraisers licensed by the State of Illinois. Each of these defendants provided an inflated appraisal for one or more Subject Properties. The appraisals were submitted to plaintiff at the time the Subject Loans were sold to plaintiff.

The Complaint specifically identifies the six Subject Loans, including the amounts of the loans, the underlying Subject Properties, the real or purported borrowers, the dates of the Loans, and the dates the Loans were resold. As to five of the Subject Properties, prior sales in which the prices increased substantially in a short time period are identified, including the sales dates, sales prices, and purported buyers and sellers.[7] As to the four purported borrowers who were deceased prior to the closings, their dates of death are alleged and supported by copies of a death certificate or obituary.[8] As to one Subject Property (Saginaw), it is alleged that the false representation was that it was owner occupied. The fact that this property was

_____

[7]For example, it is alleged that, on April 26, 2002, the Shields property was sold by Provident Bank to Denray Management, Inc. for $32,000.00, and then, On May 9, 2002, sold to borrower Peter Vassallo for $150,000.00.

[8]The Shields and Saginaw properties are the two Subject Properties that do not involve allegations that the borrower was dead prior to the closing of the loan.

not actually owner occupied prevented plaintiff from reselling the loan on the secondary market.

As to five[9] of the Subject Properties, the Appraiser Defendant's involvement is specifically alleged. The particular Appraiser Defendant who appraised each Subject Property is identified and deficiencies in the appraisals are identified. The deficiencies generally involve failure to disclose or affirmatively misrepresenting the conditions of the Subject Properties and failing to note the recent sales of the Subject Properties at substantially lower prices.

It is alleged that plaintiff and IMC had a Correspondent Loan Purchase Agreement ("CLP Agreement") dated March 22, 2002. Under the CLP Agreement, plaintiff and IMC had an ongoing business relationship in which plaintiff would purchase mortgage loans from IMC or its affiliates, including CMF. IMC made fraudulent representations to plaintiff when selling the Subject Loans in that IMC misrepresented that (a) the Subject Loans were secured by properties worth the market values reflected in the appraisals; (b) as to four of the Subject Loans, that the borrowers were then-living; and (c) that authentic signatures were on loan documents for the three deceased borrowers.[10] The

---

[9]The Subject Property not included in the five is the Saginaw property.

[10]One of the deceased borrowers was the named borrower on two of the Subject Loans.

loan documents involving the deceased borrowers contain false statements that a CMF or IMC employee conducted a face-to-face interview with the borrower, Pililimis on two of the loans, Wider on one, and nondefendant CMF employee Jenny Poe on the other. It is alleged that plaintiff relied on the false representations when purchasing the loans. It is also alleged that Wider, Pililimis, and other IMC/CMF employees knew the representations were false.

It is alleged that Seeman was personally involved in the closings for all six of the Subject Loans and that Nations Title was involved in the closings through Seeman and other employees. Nations Title was responsible for "preparing the documents of conveyance; issuing title insurance; conducting settlements of the sale and financing transactions; collecting payments from the buyers and sellers; and disbursing purchase money." Compl. ¶ 77. Seeman was a closing manager for Nations Title and a certified notary public. As to the four Subject Loans involving the purported borrowers who were deceased, Seeman notarized documents falsely stating that the purported borrowers appeared before her and executed the documents. It is alleged that Seeman and Nations Title "knew or should have known" that these borrowers were deceased. As to one property, Seeman also participated in preparing a HUD-1 form and warranty deed containing a forged signature of purported seller Kyla Fondren, even though Fondren

had previously sold the property to another person.  There are no additional allegations regarding Seeman's and Nations Title's involvement in the two Subject Loans not involving the deceased purported borrowers, other than that they conducted the closings.

As to Seeman and Nations Title, it is further alleged:

> 87.  Along with the other Defendants, [Nations Title] and Seeman conspired to defraud, and did defraud, Guaranty Residential by ratifying the borrowers' forged signatures in countersigning the aforementioned closing documents and in affixing Seeman's official notary seal to those documents.  The ratification of the forged signatures by Seeman violated the Illinois Notary Public Act (5 ILCS 312/6-102 (West 1996)), by swearing under oath that she witnessed the signing of the closing documents when, in fact, she knew that these borrowers were deceased.  This violation of Illinois law constitutes fraudulent and unlawful means in furtherance of the conspiracy to defraud Guaranty Residential.
> 88.  [Nations Title] and Seeman knew or should have known they were participating in the conspiracy to defraud Guaranty Residential or actually were defrauding Guaranty Residential by the use of the fraudulent and unlawful means identified in the preceding paragraph and elsewhere in this Complaint.
> 89.  [Nations Title] and Seeman knew or should have known that their actions would affect Guaranty Residential's decisions with respect to the Subject Loans by causing Guaranty Residential to reasonably rely on the accuracy and completeness of the closing documents.

Compl. ¶¶ 87-89.

As to Lawyers Title, it is not alleged that Lawyers Title was aware of or directly involved in the fraudulent activity.  Instead, it is contended that Lawyers Title is liable on Counts I

through V based on Nations Title being its agent. The entire allegations regarding the relationship between Lawyers Title and Nations Title are included in the following paragraphs of the Complaint.

91. On information and belief [Lawyers Title] contracted with [Nations Title] to serve as its agent in the issuance of title insurance. In connection with the provision of such insurance, [Lawyers Title] also permits its title agents to perform escrow and related closing services with respect to the property conveyance and related mortgage transactions. Accordingly, [Nations Title] acted as [Lawyers Title's] agent pursuant to actual and apparent authority when it engaged in closing activities relating to the Guaranty Residential loans that are at issue in this action.

92. [Lawyers Title] is liable for the acts of [Nations Title] as the closing agent for the loans at issue in this action based on the manner in which [Lawyers Title] holds itself out to the public as providing closing services through its closing agents. Specifically, this includes representations that [Lawyers Title's] title closing agents perform closing services, including preparation of documents and the collection and disbursement of funds. By making such representations, [Lawyers Title] gives the appearance to the public at large, including Guaranty Residential, that [Lawyers Title] has authorized [Nations Title] to act as its agent in providing mortgage loan closing services.

93. [Lawyers Title] is liable for the acts of [Nations Title] as the closing agent for the loans at issue in this action based on the manner in which [Nations Title] holds itself out to the public as being an agent of [Lawyers Title]. Specifically, by continuing to allow [Nations Title] to make such representations, [Lawyers Title] gives the appearance to the public at large, including Guaranty Residential that [Lawyers Title] has authorized [Nations Title] to

act as its agent in providing mortgage loan
closing services.

Compl. ¶¶ 91-93.

As to conspiracy, it is additionally alleged as to all
defendants: "Defendants, either individually or through their
agents, entered an agreement or common plan to accomplish the
sale of the Subject Loans to Guaranty Residential by the use of
fraudulent and unlawful means." Compl. ¶ 101. It is also
alleged that "Defendants conspired with and amongst themselves
and others to violate the provisions of 18 U.S.C. § 1962(a), and
that conspiracy by Defendants violated 18 U.S.C. §§ 1962(c) and
1962(d)." Id. ¶ 134. Overt acts are alleged and that defendants
"controlled, managed, supervised, authorized, sanctioned,
recommended, concurred in, ordered, participated in, and/or knew
of or should have known of these overt acts in furtherance of the
conspiracy." Id. ¶ 106.

In the RICO count, it is alleged that defendants used the
mails, interstate carriers, and/or wired facsimiles when
providing plaintiff the documents containing misrepresentations.
No specific mailing or use of the wires is alleged. See Compl.
¶¶ 126, 128-29. It is also alleged that defendants received
income directly from their racketeering activity and used the
income or its proceeds for their own operations. Id. ¶ 133.

There is no express allegation that the proceeds were invested in the enterprise itself.

As to the existence of a RICO enterprise, plaintiff conclusorily alleges that "Defendants collectively constitute an 'enterprise' within the meaning of 18 U.S.C. § 1961(4)." Compl. ¶ 129. In addition to particulars about how the fraud was committed, it is also alleged:

> 136. Defendants' conduct, by its very nature, is continuous in that the threat of repetition in the future is both likely and distinct. On information and belief, Defendants' conduct is part of an ongoing and regular way of doing business. For example, Defendants IMC and Wider are currently engaged in litigation with Greenpoint Mortgage Funding, Inc., in the Queens County Supreme Court in the State of New York (No. 10542/02). It is alleged therein that Greenpoint purchased a loan from IMC, based on IMC's fraudulent representations and warranties as to the quality of the loan and that IMC fraudulently altered the date on a deed.
> 137. On information and belief, Defendants are part of a long term association that exists for fraudulent and criminal purposes which include defrauding, among others, mortgage lenders and their assignees.

Id. ¶¶ 136-37.

Most of the activities alleged in the Complaint occurred from April through June of 2002. At least four of the earlier purchases of Subject Properties at lower prices occurred prior to April 2002. The earliest that one of the Subject Properties was purchased by a related person or entity was the October 2, 2001 purchase of one Subject Property.

Lawyers Title contends all the claims against it,
including the RICO claim, fail because plaintiff has not alleged
a basis for agency liability. It also contends that the RICO
claim fails because a RICO enterprise has not been adequately
alleged.. Nations Title and Seeman attack the state law claims
on various grounds. As to the RICO claim, they contend plaintiff
has not adequately alleged a RICO enterprise, a pattern of
racketeering activity, nor their conducting of an enterprise in
violation of 18 U.S.C. § 1962(c).[11] The RICO claim will be
considered first.

Plaintiff contends all the named defendants constitute
the enterprise.

> . . . While a RICO enterprise can be formal
> or informal, some type of organizational
> structure is required. See Richmond [v.
> Nationwide Cassel L.P.], 52 F.3d [640,] 645 [(7th
> Cir. 1995)]; Bachman v. Bears, Stearns & Co.,
> 178 F.3d 930, 931 (7th Cir. 1999). A RICO
> enterprise must have "an ongoing 'structure' of
> persons associated through time, joined in
> purpose, and organized in a manner amenable to
> hierarchical or consensual decision making."
> Jennings v. Emry, 910 F.2d 1434, 1440 (7th Cir.
> 1990) (citations omitted); see United States v.
> Turkette, 452 U.S. 576, 583, 101 S. Ct. 2524, 69
> L. Ed. 2d 246 (1981) (describing a RICO
> enterprise as "a group of persons associated
> together for a common purpose of engaging in a
> course of conduct" and indicating that an

---

[11]The arguments concerning alleging an enterprise and
pattern of racketeering activity would generally be applicable to
all defendants. Lawyers Title's argument regarding predicate
acts is primarily limited to allegations regarding its own
involvement, but in part applies generally to all defendants.

> enterprise is shown "by evidence of an ongoing
> organization, formal or informal, and by evidence
> that the various associates function as a
> continuing unit"). Moreover, because a RICO
> enterprise is "more than a group of people who
> get together to commit a 'pattern of racketeering
> activity,'" Richmond, 52 F.3d at 645 (internal
> quotation and citation omitted); see Bachman,
> 178 F.3d at 932, there must be "an organization
> with a structure and goals separate from the
> predicate acts themselves." United States v.
> Masters, 924 F.2d 1362, 1367 (7th Cir. 1991).

Stachon, 229 F.3d at 675.

Plaintiff contends that its allegations as to an enterprise are not limited to those contained in paragraphs 129, 136, and 137. Instead, plaintiff contends that the allegations describing the fraudulent activity establish the necessary structure. The allegations of fraud, however, do not set forth the structure of the enterprise; an enterprise must be more than a group of people and entities who commit a pattern of criminal activity. Stachon, supra. Moreover, plaintiff alleges that all the defendants constitute the enterprise. Two of the Appraiser Defendants, however, are alleged to have been directly involved with only one of the Subject loans. Such sporadic involvement is not sufficient to make them part of an enterprise. Pulphus v. Sullivan, 2003 WL 1964333 *7 (N.D. Ill. April 28, 2003). Plaintiff has not alleged a RICO enterprise. Cf. Stachon, supra; Richmond, supra.

Plaintiff also contends it cannot plead facts as to the actual relationship between the parties without first obtaining more discovery. Plaintiff, however, can do more than simply lump all named defendants together as the enterprise. Plaintiff can presently describe some or all aspects of the structure. As noted in plaintiff's brief, some documents attached to one of the motions to dismiss would enable it to allege at least some aspects of the structure. Since plaintiff does not adequately allege an enterprise, the RICO claim will be dismissed as to all defendants. However, plaintiff will be provided an opportunity to amend the Complaint to cure the deficiencies. Since it is possible that plaintiff will be able to cure the deficiency regarding alleging an enterprise, the other grounds that are raised regarding the RICO claim will still be considered.

It is contended that plaintiff has not adequately alleged a pattern of racketeering activity. The issue raised is not whether plaintiff has alleged the predicate acts themselves with sufficient particularity,[12] but whether the predicate acts that

---

[12]Lawyers Title contends that its involvement in the predicate acts has not been alleged with adequate specificity. That argument goes to the question of whether agency has been adequately alleged, which is separately considered below. Although not raised by defendants, a question exists as to whether plaintiff has sufficiently alleged mailings or wire communications supporting its claim of mail and wire fraud. See Demes v. ABN Amro Services Co., 2001 WL 563813 *3-4 (N.D. Ill. May 23, 2001). Even if mail and wire fraud is not adequately pleaded, plaintiff also relies on bank fraud. However, plaintiff has not alleged that itself or some other defrauded entity is a

are alleged constitute a pattern of racketeering activity.

Plaintiff has alleged multiple acts of fraud. In order to allege

a pattern of racketeering activity, two predicate acts occurring

within ten years of each other must be alleged as well as

sufficient facts showing "continuity plus relationship with

respect to the alleged predicate" acts. Williams v. Aztar

Indiana Gaming Corp., 351 F.3d 294, 298 (7th Cir. 2003) (quoting

Corley v. Rosewood Care Center, Inc., 142 F.3d 1041, 1048 (7th

Cir. 1998)). This requires allegations both that the predicate

acts are related to one another and that they pose a threat of

continued criminal activity. Id.; Anael v. Interstate Brands

Corp., 2003 WL 21995183 *7 (N.D. Ill. Aug. 18, 2003). "The

relationship prong requires that the predicate acts be 'committed

somewhat closely in time to one another, involve the same victim,

or involve the same type of misconduct.'" Shapo, 246 F. Supp. 2d

at 959 (quoting Vicom, 20 F.3d at 779). The continuity prong can

be satisfied by allegations of either "closed-ended" or "open-

ended" continuity. Shapo, 246 F. Supp. 2d at 960. Here,

plaintiff cannot rely on closed-ended continuity because the

scheme that is alleged in the Complaint covers only a short

---

financial institution, as would be required for bank fraud. See
18 U.S.C. §§ 20, 1344. Since the issues are not raised by
defendants, for present purposes, it is assumed that the mail,
wire, and financial institution elements of the RICO predicate
acts have been adequately alleged. Any amended complaint that is
filed should ensure that all elements of the predicate acts are
adequately pleaded.

period of time.  See id.  Open-ended continuity can be based on
predicate acts occurring over a short period of time, but the
nature of the acts must have represented a threat of repetition
into the future.  Corley, 142 F.3d at 1049.  "Such a threat is
present when: '(1) 'a specific threat of repetition' exists,
(2) the predicates are a regular way of conducting [an] ongoing
legitimate business,' or (3) 'the predicates can be attributed to
a defendant operating as part of a long-term association that
exists for criminal purposes.''"  Id. (quoting Vicom, 20 F.3d
at 782 (quoting H.J. Inc. v. Northwestern Bell Telephone Co.,
492 U.S. 229, 242-43 (1989))).

Here, six fraudulent loan transaction occurred within a
few months of each other.  The six Subject Loans were sold to a
single victim on four different dates and involved similar
misrepresentations.  The relationship prong clearly is satisfied.
Plaintiff conclusorily alleges that defendants' conduct
represented a regular way of doing business and a threat of
continued conduct.  Such conclusory allegations, however, are not
sufficient to allege open-ended continuity, specific facts must
support such a conclusion.  Johnson Controls, Inc. v. Exide
Corp., 132 F. Supp. 2d 654, 661 (N.D. Ill. 2001); Early v. K-Tel
International, Inc., 1999 WL 181994 *4 (N.D. Ill. March 24,
1999); Bachman v. Bear Stearns & Co., 1997 WL 769554 *9 (N.D.
Ill. Dec. 4, 1997), aff'd, 178 F.3d 930 (7th Cir. 1999); Buck

Creek Coal, Inc. v. United Workers of America, 917 F. Supp. 601, 612 (S.D. Ind. 1995). The allegations regarding another victim to whom fraudulent loans were sold must be ignored because those purported acts of fraud are not alleged with any particularity whatsoever. Nevertheless, the specific facts that are alleged support that a threat of continued racketeering activity existed. Six different loans were sold to plaintiff that involved fraudulent documentation. At least three different appraisers were brought into the scheme as well as a number of intermediary buyers of the property who are not named as defendants. This is indicative of a scheme that threatened to be (and following discovery may actually be proved to have been) more widespread than just the six Subject Loans sold to plaintiff during a few-month period of time. Cf. United States v. Busacca, 936 F.2d 232, 238 (6th Cir. 1991) (cited favorably in United States. v. Torres, 191 F.3d 799, 808 (7th Cir. 1999), cert. denied, 528 U.S. 1180 (2000)). Plaintiff has alleged a pattern of racketeering activity.

As to conducting the affairs of an enterprise in violation of § 1962(c), plaintiff's allegations are deficient in a manner similar to the deficiency in alleging the existence of an enterprise. In order to commit a violation of § 1962(c), the defendant must have had some part in directing the affairs of the enterprise; "[i]n other words, she must have participated in the

operation or the management of the enterprise itself, and she must have asserted some control over the enterprise." Slaney, 244 F.3d at 598 (quoting United States v. Swan, 224 F.3d 632, 635 (7th Cir. 2000), amended and superseded by, 250 F.3d 495, 498-99 (7th Cir. 2001)). See also Roger Whitmore's Automotive Services, Inc. v. Lake County, Ill., 2002 WL 959587 *6 (N.D. Ill. May 9, 2002). Other than generally alleging that all defendants controlled the enterprise, plaintiff has not alleged which individuals or entities exercised control over the purported enterprise. No § 1962(c) violation is adequately stated. See Slaney, 244 F.3d at 598.[13]

In an argument that applies only to itself, Lawyers Title contends it cannot be liable for the RICO claim against it because Nations Title's provision of closing services was not as an agent of Lawyers Title. This purported agency relationship is independent of the fraudulent racketeering activity itself and

---

[13]This ruling would apply to all defendants. However, if plaintiff otherwise had sufficiently alleged an enterprise, plaintiff's RICO claims would not be dismissed in their entirety for failing to adequately allege a violation of § 1962(c). Plaintiff also relies on violations of § 1962(a), and related § 1962(d) violations. Though not raised by defendants, plaintiff may not have adequately alleged investment of the income in the enterprise as is required for a § 1962(a) violation. See Kauthar, 149 F.3d at 672; Xinos v. Kappos, 270 F. Supp. 2d 1027, 1031 (N.D. Ill. 2003). To the extent plaintiff attempts to amend its Complaint to state a § 1962(c) violation, it is also noted that, in order to allege § 1962(c) liability on the part of the corporate defendants, it cannot simply be alleged that employees or agents of the corporation engaged in violations of § 1962(c). See Emery, 134 F.3d at 1323-24.

therefore need not be pleaded with the particularity required by Rule 9(b). <u>Lachmund</u>, 191 F.3d at 783; <u>Sequel Capital, LLC v. Rothman</u>, 2003 WL 22757758 *13 (N.D. Ill. Nov. 20, 2003); <u>Hirata</u>, 193 F.R.D. at 597 & n.4. Since Rule 9(b) does not apply, it would be sufficient to allege conclusorily, as is done in ¶ 91 of the Complaint, that Nations Title was acting as Lawyers Title's agent when performing closing services. <u>Sequel Capital</u>, 2003 WL 22757758 at *13-14; <u>Hirata</u>, 193 F.R.D. at 597. The question is whether, despite the conclusory allegations of an agency relationship contained in ¶ 91 of the Complaint, plaintiff has alleged facts (<u>see</u> Compl. ¶¶ 91-93) showing that Nations Title was not acting as Lawyers Title's agent when providing closing services. <u>See Slaney</u>, 244 F.3d at 597; <u>Kauthar</u>, 149 F.3d at 669-70 & n.14; <u>Jackson</u>, 66 F.3d at 153-54.

Lawyers Title contends that actual authority has not been alleged because plaintiff alleges that Lawyers Title "permits" Nations Title to engage in closing transactions, not that it "grants authority" to engage in closing transactions. While "permits" could mean allows by acquiescence, it also can mean expressly authorizes. Moreover, when it is immediately thereafter followed by an allegation of "actual . . . authority," Compl. ¶ 91, the Complaint must be read as alleging actual authority. Since ¶ 91 also refers to a contract that permits Nations Title to act as Lawyers Title's agent in the issuance of

title insurance, Lawyers Title provides a copy of that contract

to show that the contract does not grant Nations Title authority

to act as Lawyers Title's agent for closings.[14] Reliance on the

cited provision is misplaced. First, the Complaint does not

allege that this contract is the basis for Nations Title being an

agent for purposes of a closing nor that this is the only

agreement, written or oral, that exists between Lawyers Title and

Nations Title. Second, the contract provision relied upon only

indicates that this particular contract does not establish an

agency relationship as to closings,[15] it does not preclude an

agency relationship from otherwise being created. The contract

provided by Lawyers Title does not conclusively establish that an

agency relationship did not exist. While it may ultimately be

shown that no relationship of actual authority existed, on the

motion to dismiss, plaintiff's allegations of a principal-agent

relationship must be taken as true.

---

[14]Although the copy of the contract was not provided
until Lawyers Title's reply, it may be considered since plaintiff
was thereafter permitted to file a surreply which addresses the
contract attached to Lawyers Title's reply.

[15]Plaintiff points to the provision in this section that
Lawyers Title may provide closing protection letters as to
particular transactions whereby it agrees to indemnify the
addressee for closing errors made by Nations Title in the
specified transaction. Agreeing to provide indemnification does
not establish an agency relationship. See Del Angel v.
Heidelberg Eastern, Inc., 2002 WL 1303132 *3 (N.D. Ill. June 12,
2002).

Even if actual authority had not been adequately alleged, plaintiff has also pleaded apparent authority.

> Under Illinois law, "an agent may bind his principal by acts which the principal has not given him actual authority to perform, but which he appears authorized to perform." Lundberg v. Church Farm, Inc., 151 Ill. App. 3d 452, 502 N.E.2d 806, 813 (2d Dist. 1986), appeal denied, 114 Ill. 2d 547, 508 N.E.2d 729 (1987). "An agent's apparent authority is that authority which 'the principal knowingly permits the agent to assume or which he holds his agent out as possessing. It is the authority that a reasonably prudent man, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.'" Id. (quoting Hofner v. Glenn Ingram & Co. 140 Ill. App. 3d 874, 489 N.E.2d 311, 316 (1st Dist. 1985)). Accord A.J. Maggio Co. v. Willis, 316 Ill. App. 3d 1043, 738 N.E.2d 592, 598 (1st Dist. 2000), appealed dismissed, 197 Ill. 2d 397, 757 N.E.2d 1267 (2001); International Union of Operating Engineers v. Triad Construction Services, Inc., 1999 WL 571053 *7 (N.D. Ill. July 29, 1999). Apparent authority must derive from acts of the principal. Lundberg, 502 N.E.2d at 813. . . . The inquiry focuses on three factors: (1) the manifestation to the third party by the principal; (2) the reasonableness of the third party's belief that authority extended to the act of the agent; and (3) the third party's detrimental reliance on the apparent authority. Aspacher v. Kretz, 1997 WL 692943 *5 (N.D. Ill. Aug. 13, 1997).

Sphere Drake Insurance Ltd. v. All American Life Insurance Co., ___ F. Supp. 2d ___, 2003 WL 22232840 *6 (N.D. Ill. Sept. 22, 2003).

Plaintiff conclusorily alleges that Nations Title had apparent authority to act as Lawyers Title's closing agent.

Although federal pleading rules do not require that more be alleged, it is also alleged that Lawyers Title itself held itself out to the public as providing closing services through closing agents. There is no express allegation of plaintiff's reliance on these representations, but plaintiff's knowledge of Lawyers Title's representations and detrimental reliance thereon can be inferred from the allegations of the Complaint. Apparent authority is adequately alleged.

Even if an agency relationship is adequately alleged, Lawyers Title cites <u>Williams Electronics Games, Inc. v. Barry</u>, 42 F. Supp. 2d 785, 792-93 (N.D. Ill. 1999), for the proposition that RICO liability is not stated because plaintiff has not alleged Lawyers Title's knowing authorization or acquiescence in the fraudulent conduct of Nations Title. Plaintiff expressly alleges that Lawyers Title did not "actively participate" in the fraud. Compl. ¶ 9. That, however, is not an allegation that Lawyers Title's receipt of title insurance fees from the transactions was without knowledge of the underlying fraudulent conduct. To the contrary, the Complaint expressly alleges that all defendants, including Lawyers Title, knew of the fraudulent misrepresentations. <u>See</u> Compl. ¶ 96. Therefore, even if <u>Barry</u> correctly states the vicarious liability standard under RICO, plaintiff has alleged knowing acquiescence by Lawyers Title.

Still to be considered are Nations Title's and Seeman's contentions regarding the state law claims. As to the Count I fraud claim, these defendants contend that their knowledge of the fraudulent nature of the signatures is not adequately alleged. They also contend the Notary Public Act was not violated and that Seeman's notarization of the signatures did not constitute a ratification. The latter two contentions are immaterial issues that need not be addressed. Even under Rule 9(b), knowledge can be generally alleged. Sequel Capital, 2003 WL 22757758 at *1; Ray v. Citigroup Global Markets, Inc., 2003 WL 22757761 *2 (N.D. Ill. Nov. 20, 2003). Although plaintiff alleges that defendants "knew or should have known," Compl. ¶ 96, the alternative that is more favorable to plaintiff must be taken as true in ruling on defendants' motion to dismiss. See Alper v. Altheimer & Gray, 257 F.3d 680, 688 (7th Cir. 2001); Convoy Servicing Co. v. Trailmobile Trailer, LLC, 234 F. Supp. 2d 826, 832 (N.D. Ill. 2002), Anderson v. Cornejo, 1999 WL 35307 *4 (N.D. Ill. Jan. 11, 1999). Actual knowledge is assumed to be true for purposes of ruling on the fraud claim. Plaintiff has alleged that Seeman knew the named borrowers were dead and also that she knew the signatures she was notarizing were not those of the named borrowers. It is also alleged that Seeman knew that the particular HUD-1 did not contain the signature of the purported seller. Seeman's and Nations Title's knowledge and participation

in the fraud regarding the four Subject Loans involving the deceased borrowers is adequately alleged. As to the two other Subject Loans, it is alleged that Seeman and Nations Title conducted the closings, Compl. ¶ 77, and that they knew of the fraudulent representations related to all the transactions, id. ¶ 96. Therefore, direct liability regarding these two Subject Loans has also been alleged. Even if not liable based on direct participation, Seeman and Nations Title would be liable to the extent they are adequately alleged to be members of a conspiracy and the fraud regarding the other two Subject Loans was in furtherance of that conspiracy. Adcock v. Brakegate, Ltd., 164 Ill. 2d 54, 645 N.E.2d 888, 894-95 (1994). Assuming adequate jurisdiction, Count I would not be dismissed.

Count II is a claim for conspiracy to commit fraud. As has been previously set forth, the fraud itself is alleged with adequate specificity. The particularity requirement of Rule 9(b) does not apply to the conspiracy allegation itself. See Hecht, 897 F.2d at 26 n.4; Perlman, 938 F. Supp. at 1348-49. "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." Hoskins v. Poelstra, 320 F.3d 761, 764 (7th Cir. 2003) (quoting Walker v. Thompson,

288 F.3d 1005, 1007 (7th Cir. 2002)). As to the Count II common law claim, plaintiff has adequately alleged a conspiracy.[16]

Count III is a claim for negligent misrepresentation. The elements of such a claim are: "(1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by the party making it, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statement, and (5) damage to the other party resulting from such reliance, (6) when the party making the statement is under a duty to communicate accurate information." Fox Associates, Inc. v. Robert Half International, Inc., 334 Ill. App. 3d 90, 777 N.E.2d 603, 606 (1st Dist. 2002). There is generally no duty unless the defendant is in the business of providing information for the guidance of others in business dealings. Id.; Tolan & Son, Inc. v. KLLM Architects, Inc., 308 Ill. App. 3d 18, 719 N.E.2d 288, 296 (1st Dist. 1999); Bank One, Oklahoma, N.A. v. Trammell Crow Services, Inc., 2003 WL 23019173 *4 (N.D. Ill. Dec. 23, 2003); Calderon v. Southwestern Bell Mobile Systems, LLC, 2003 WL 22340175 *5 (N.D. Ill. Oct. 10, 2003). Determining whether a defendant owes the duty is a

-------------------------------------------

[16]Defendants do not raise the issue of whether a RICO conspiracy has been adequately alleged. If plaintiff files an amended complaint that continues to include allegations of a RICO conspiracy in violation of 18 U.S.C. § 1962(d), plaintiff should ensure that its allegations of a conspiracy are sufficient. See Lachmund, 191 F.3d at 784-85.

"precise, case-specific inquiry." <u>Tolan</u>, 719 N.E.2d at 296

(quoting <u>Rankow v. First Chicago Corp.</u>, 870 F.2d 356, 361 (7th

Cir. 1989)).  <u>See also</u> <u>Fox</u>, 777 N.E.2d at 608.

> The negligent misrepresentation exception
> has been applied to pure information providers
> such as accountants; a bank providing credit
> information to a potential lender; aircraft,
> inventory and termite inspectors; a title
> insurer; real estate brokers; and stockbrokers.
> In these cases, the product was purely
> information--the consumer received analytical
> work rather than a tangible product. "In other
> words, the end product [was] the ideas, not the
> documents or other objects into which the ideas
> [were] incorporated."  "[S]upplying information
> need not encompass the enterprise's entire
> undertaking [for the defendant to fall within the
> information provider exception,] but
> [information] must be central to the business
> transaction between the parties."
> In contrast, when the information offered by
> the defendant relates to the defendant's tangible
> goods and/or noninformational goods or services,
> the information is considered merely ancillary or
> incidental, and the defendant is not deemed to be
> in the business of providing information and is
> not liable for negligent misrepresentation.
> Examples of defendants in this category
> include manufacturers and sellers of tangible
> goods such as computers and construction
> materials.
> An additional example includes an architect
> and engineer retained to design and build
> townhomes who did not advise their client that
> the site's soil was highly compressible and could
> not support the buildings' foundations.
>                 * * *
> . . . The determination is dependent upon
> the nature of the information at issue and its
> relation to the kind of business being conducted.
> "'The critical question * * * is whether the
> information is an important part of the product
> offered.  [A] business[ ] will be deemed to be in
> the business of supplying information if the

> information furnished along with the non-
> informational goods or services is central
> to the business transaction.'"  Tolan & Son,
> 308 Ill. App. 3d at 29.

Fox, 777 N.E.2d at 607-08 (citations omitted).[17]

Defendants contend plaintiff has not alleged facts supporting a duty owed to plaintiff.  However, since Rule 9(b) does not apply to claims of negligent misrepresentation, Kennedy, 348 F.3d at 593, it is sufficient to conclusorily allege that the duty exists.  See Chaikin v. Fidelity & Guaranty Life Insurance Co., 2003 WL 21003715 *2 (N.D. Ill. May 1, 2003).  However, if the facts that are alleged show that no such duty existed, plaintiff has pleaded itself out of court on this count.  See Woodard v. American Family Mutual Insurance Co., 950 F. Supp. 1382, 1389 (N.D. Ill. 1997).  Plaintiff alleges defendants had a duty not to cause plaintiff to purchase mortgages defendants knew or should have known were inadequately collateralized and/or for which the borrowers were deceased.  See Compl. ¶¶ 111-12, 114-15. Plaintiff has also alleged that Nations Title and Seeman were the parties responsible for conducting the closings and that Seeman notarized the signatures of the purported borrowers who were

---

[17]In Fox, 777 N.E.2d at 609, it was held that a temporary employment agency did not have a duty to provide employers with accurate information as to a placed employee's background.

already deceased.[18]   These two defendants would be entitled to

dismissal of Count III if there is no set of facts under which

defendants in that position could be found to have the necessary

duty.

Defendants contend an escrow agent's duties are limited

to those contained in its escrow instructions.  Bescor, Inc. v.

Chicago Title & Trust Co., 113 Ill. App. 3d 65, 446 N.E.2d 1209,

1213 (1st Dist. 1983).  Pointing to the closing instructions,

which are referenced in the Complaint, defendants contend they

had no duty to investigate possible identity fraud.  They do

admit that the instructions for at least three of the Subject

Loans to deceased borrowers stated that "All signatures

must be witnessed if required and customary.  All signature

acknowledgments must be executed by a person authorized to take

acknowledgments in the state of closing."  Each of the closing

instructions for the four Subject Loans involving deceased

borrowers contained an addendum requiring valid identification

and social security number.

---

[18]There is no contention that the negligent
misrepresentation arose from defendants' role as title insurer.
Case law supports that, as to representations regarding the
title, the title insurer is in the business of supplying
information for others.  See Notaro Homes, Inc. v. Chicago Title
Insurance Co., 309 Ill. App. 3d 246, 722 N.E.2d 208, 216-17 (2d
Dist. 1999), appeal denied, 189 Ill. 2d 661, 731 N.E. 2d 765
(2000).

Even assuming that valid identification was the limit of these defendants' pertinent duties, plaintiff alleges that this duty was violated. Defendants contend this duty was not violated because this duty did not require that they inquire beyond the identifications that were provided to Seeman. However, there is no allegation that false identification documents were provided and that reasonable care would not have revealed their falsity. Instead, it is alleged that Seeman was well aware that the persons signing the forms were not who they represented themselves to be. Additionally, as to four of the Subject Loans, Seeman knew the purported borrowers were actually dead. Thus, as to four of the Subject Loans, these two defendants violated their duty to obtain valid identification.

A notary and her employer can be liable for negligence in determining the identity of the person whose signature is being notarized. Shelter Management XIX v. Much Shelist Freed Denenberg & Ament P.C., 303 Ill. App. 3d 1067, 709 N.E.2d 592, 596 (1st Dist. 1998), appeal denied, 185 Ill. 2d 666, 720 N.E.2d 1106 (1999); Hoffman v. Schroeder, 38 Ill. App. 2d 20, 186 N.E.2d 381, 387-88 (1st Dist. 1962); Bussman v. Krizoe, 166 Ill. App. 3d 770, 520 N.E.2d 971, 973 (5th Dist.), appeal denied, 122 Ill. 2d 570, 530 N.E.2d 240 (1988). Plaintiff, however, was not a party to the original loan transactions. Seeman's duty to acknowledge the authenticity of the signatures, however, was a duty that

centered on providing information. Her verification of
signatures for closing transactions was used by others in their
business dealings. Other jurisdictions have held that a notary
public can be liable to third parties for negligent performance
of his or her duties, including for negligent misrepresentation
claims. See Thomas v. State ex rel. Thorp Finance Corp., 251
Miss. 648, 171 So. 2d 303 (1965); Biakanja v. Irving, 49 Cal. 2d
647, 320 P.2d 16 (1958); State ex rel. Park National Bank v.
Globe Indemnity Co., 332 Mo. 1089, 61 S.W.2d 733 (1933);
Immerman v. Ostertag, 83 N.J. Super. 364, 199 A.2d 869, 872-73
(1964). See also Bernal v. Weitz, 54 Mass. App. Ct. 394, 765
N.E.2d 798 (2002). But see NationsBank of North Carolina,
N.A. v. Parker, 140 N.C. App. 106, 535 S.E.2d 597, 599 (2000).

Seeman had a duty to accurately authenticate the
signature which she allegedly did not exercise with adequate
care. On the facts alleged in the Complaint, Seeman and Nations
Title may be found liable for negligent misrepresentation
regarding the four Subject Loans involving purported borrowers
who were deceased.

Negligent misrepresentation regarding the value of the
collateral, however, is different. It is alleged that these two
defendants actually knew all the Subject Properties were
overvalued. However, plaintiff makes no argument as to why a
closing agent would have a duty to provide information

regarding the value of collateral. Therefore any negligent misrepresentation claim against these two defendants based on the misrepresented value of the Subject Properties would be limited to possible liability based on the acts of coconspirators in furtherance of the conspiracy.

In response to the motion to dismiss, plaintiff clarifies that Count IV is for promissory estoppel. Plaintiff is not bound by the label placed on the claim in the Complaint. <u>Forseth</u>, 199 F.3d at 368; <u>Kirksey</u>, 168 F.3d at 1041. The elements of promissory estoppel are: "1. An unambiguous promise was made to the party. 2. The party relied upon this promise. 3. The party's reliance upon this promise was reasonable in nature. 4. The party suffered a detriment as a result of this reliance." <u>ESM Development Corp. v. Dawson</u>, 342 Ill. App. 3d 688, 795 N.E.2d 397, 402 (5th Dist. 2003). In Count IV, plaintiff alleges "Defendants clearly and definitely promised, represented and led Guaranty Residential to believe that the Subject Properties' values as stated in the appraisals were their true fair market values and that the borrowers were then-living." Compl. ¶ 120. This is the purported promise relied upon by plaintiff in response to the motion to dismiss.

Plaintiff bases his promissory estoppel claim on representations, not a promise. Promissory estoppel is based on a promise of future action, whereas the similar claim of

equitable estoppel is based on a misrepresentation of fact.  See
Promero, Inc. v. Mammen, 2002 WL 31455970 *9 n.2 (N.D. Ill.
Nov. 1, 2002); In re Marriage of Schmidt, 292 Ill. App. 3d 229,
684 N.E.2d 1355, 1363 (4th Dist. 1997), appeal denied, 176 Ill.
2d 592, 690 N.E.2d 1387 (1998).  Plaintiff does not allege any
promise of future action by defendants.  No promissory estoppel
claim is alleged.  Unless amended to state a promise, not merely
a representation of past fact, no promissory estoppel claim
should be included in any amended complaint.

As is discussed above plaintiff has adequately alleged
three claims against defendants and may be able to properly
allege a RICO claim against all defendants.[19]  Since the original
Complaint also contained deficient allegations as to diversity
jurisdiction, the entire Complaint will be dismissed and
plaintiff will be granted leave to file an amended complaint.
Any claims contained in the amended complaint should be
consistent with the rulings contained in today's opinion.  The
pending motion for entry of default will be denied without
prejudice to filing such a motion if those defendants fail to
answer the amended complaint.

IT IS THEREFORE ORDERED that plaintiff's motion to file a
surreply [34] is granted.  Defendant's motion for entry of

---

[19]The adequacy of Counts VI, VII, and VIII, which are
only against a defendant who has not moved for dismissal, have
not been considered.

default [39] is denied without prejudice.  Defendants' motions to dismiss [7, 33] are granted in part and denied in part. Plaintiff's complaint is dismissed.  By February 11, 2004, plaintiff may file an amended complaint that is not inconsistent with today's ruling.  By March 3, 2004, defendants shall answer or otherwise plead to the amended complaint.  A status hearing will be held on March 17, 2004 at 11:00 a.m.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED:   JANUARY   21 , 2004